**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEWEY COFFMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. CIV-02-1625-F |
| | ) |
| ANN M. VENEMAN, SECRETARY | ) |
| OF THE DEPARTMENT OF | ) |
| AGRICULTURE, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Defendant's Motion to Dismiss filed February 14, 2005 (docket entry no. 32), now converted to a motion for summary judgment, is before the court. The motion is at issue and ready for determination.[1]

Defendant's Third Motion to Dismiss,[2] filed May 11, 2005 (docket entry no. 58), is also at issue and ready for determination.

---

[1]Defendant moved for dismissal based on claim preclusion and issue preclusion. Plaintiff responded. Because it was necessary to consider matters outside the pleadings, the court converted the motion to one for summary judgment and the parties were given an opportunity to submit any additional materials they wished the court to consider. Defendant submitted no additional material, and plaintiff requested an extension of time within which to submit materials. Defendant objected to plaintiff's request for an extension because the request did not comply with court rules. Despite plaintiff's continuing failure to comply with court rules and the Federal Rules of Civil Procedure, the extension was granted and plaintiff timely submitted his supplemental materials. In reaching the determinations stated in this Order, the court has considered all of the parties' moving papers as well as the entire record.

[2]The motion to dismiss now converted to a motion for summary judgment, which is the principal subject of this Order, is defendant's second motion to dismiss. Defendant's first motion to dismiss was based on plaintiff's failure to effect proper service. Plaintiff eventually obtained service and defendant's first motion to dismiss was denied.

I.  Motion for Summary Judgment

This action alleges disability, age, and reprisal claims (including reprisals for EEO activity and whistleblowing) arising out of plaintiff's employment with the Department of Agriculture.[3]  Defendant seeks summary judgment on all claims based on the doctrines of claim preclusion and issue preclusion.  The adjudication which defendant argues precludes this case is the undersigned's entry of summary judgment in favor of the defendant and against the plaintiff in CIV-99-1797-F.[4]  The plaintiff in the 1999 action was Dewey Coffman, the same individual who is the plaintiff here.  The defendant in the 1999 action was the Secretary of the Department of Agriculture who was serving at the time that action was filed, Dan Glickman.  The defendant in the instant action is the Secretary of the Department of Agriculture who was serving when this lawsuit was filed, Ann Veneman.

The 1999 action was filed on November 17, 1999.  Judgment was entered in that action, in favor of defendant Secretary of Agriculture and against plaintiff Dewey Coffman, on November 30, 2004 (CIV-99-1797-F, docket entry no. 76).  The Order which granted summary judgment in the 1999 case (CIV-99-1797-F, docket entry no. 75, entered November 30, 2004) found that the defendant's motion was well supported by the record evidence and that the grounds for summary judgment put forward in the motion entitled defendant to judgment under Fed. R. Civ. P. 56.  The Order also found that the motion had been confessed.  As an alternative to summary judgment, the November 30, 2004 Order also found that defendant was entitled to dismissal of the 1999 action without prejudice under Fed. R. Civ. P. 16 and local rule 16.1, based on plaintiff's lack of evidence, plaintiff's failure to prosecute, and

---

[3] Filings by the defendant indicate that plaintiff worked at the Department until May of 1997.

[4] CIV-99-1797-F was originally assigned to Judge Ralph Thompson.  It was transferred to Judge Joe Heaton and then to the undersigned.

plaintiff's failure to comply with the court's scheduling order, any one of which the Order stated would alone be sufficient grounds for dismissal.

Mr. Coffman filed the instant lawsuit on November 15, 2002, while the 1999 action was still pending.

Standards

Plaintiff proceeds pro se and his pleadings are liberally construed. *See*, Curley v. Perry, 246 F.3d 1278, 1281, 1284 (10th Cir. 2001) (stating that pro se plaintiff's pleadings are liberally construed yet upholding sua sponte dismissal of complaint for failure to state a claim without opportunity to amend where complaint cannot be salvaged).

Under Fed. R. of Civ. P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

If a party has properly raised the issue of claim preclusion (or res judicata) in the pleadings and asserts that there are no triable issues of fact as to that doctrine's application, as is the case here by virtue of the court's having converted the motion to dismiss to one for summary judgment, then the issue of claim preclusion may be determined at the summary judgment stage. 18 Moore's Federal Practice, § 131.50[3] (Matthew Bender 3d ed.). Summary judgment may be entered on grounds of claim preclusion where the standards of Rule 56 are met. *See*, *e.g.*, Murphy v. Klein Tools, Inc., 935 F.2d 1127, 1128 (10th Cir. 1991) (upholding grant of summary judgment on res judicata grounds "applying the same legal standards used by the district court," citing Rule 56). Similarly, summary judgment is an appropriate vehicle for determining issue preclusion (or collateral estoppel). *See*, 18 Moore's at §132.05[7] (issue preclusion warranted on summary judgment when the requirements of issue preclusion and of summary judgment procedures are met).

### A.  Claim Preclusion

Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or *could have been raised* in the prior action. Wilkes v. Wyoming Department of Employment Division of Labor Standards, 314 F.3d 501, 503-04 (10th Cir. 2003) (emphasis in original). For the doctrine to apply, at least three elements must exist: (1) a final judgment on the merits in a prior action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in the two suits. *Id*. at 504. Sometimes referred to as a fourth element, there must also have been a full and fair opportunity to litigate the earlier action. *See*, Plotner v. AT&T Corp., 224 F.3d 1161, 1168 (10th Cir. 2000) (listing full and fair opportunity to litigate as a fourth element of res judicata); *cf.* Yapp v. Excel Corp., 186 F.3d 1222, 1227 n.4 (10th Cir. 1999) (generally only three elements of claim preclusion are noted, but absence of a full and fair opportunity to

litigate is an exception to the application of claim preclusion).  Whether labeled "element" or "exception," it is clear that a full and fair opportunity to litigate is essential for claim preclusion to apply.  Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1520 (10th Cir. 1990); *see also*, Yapp, 186 F.3d at 1233 (Judge Henry's dissent, discussing these two labels and noting that either way, a full and fair opportunity to litigate is required).

Here, the first element of claim preclusion is met because it is undisputed that the prior suit ended with a judgment on the merits.  The second element is met because there is an identity of parties:  the 1999 action and this action were both brought by the same plaintiff against the then-serving Secretary of the Department of Agriculture.  As to the "fourth element," the court finds that plaintiff had a full and fair opportunity to litigate the prior action.  Having personally entered summary judgment in the 1999 action, the undersigned is well-positioned to state that the fairness requirement was more than satisfied in that action, a fact which is reflected by the record in CIV-99-1797-F.[5]

Accordingly, the only element which requires extended discussion is the third element, that is, the question of whether the instant suit alleges the same cause of action as the 1999 suit.

The Complaint in the 1999 action is similar to the Complaint in the instant action.  For example, both complaints describe the scope of each action in similar language.  The 1999 Complaint states:

> Plaintiff alleges that he was discriminated against based upon reprisal for prior EEO complaint, based upon his disability, and based upon his age

---

[5]Although plaintiff's supplemental material asserts that the prior action was neglected by the attorney representing plaintiff in that action and that plaintiff was unable to respond to the judgment in that action due to a brain concussion (plaintiff's supplement, p. 12), plaintiff does not dispute that he had a full and fair opportunity to litigate the 1999 action.

> when he was submitted for a mandatory fitness for duty examination and subsequently removed from federal service due to prior EEO activity, his disability and his age.

(Complaint, CIV-99-1797, second ¶ 3.)  The Complaint in the instant action states:

> Plaintiff alleges that he was discriminated against based upon reprisal for Whistleblower activities, prior EEO complaint, based upon his disability, and based upon his age when he was submitted for mandatory fitness for duty examination.  Plaintiff had training withheld, missed promotions because of these discriminatory personnel actions.  And subsequently removed from federal service due to prior Whistleblower activities and EEO complaints, his age and disability.

(Complaint, CIV-02-1625, first ¶ 3.[6])

The first paragraphs of both complaints, which reference the law plaintiff believes supports his claims, are also very similar.  Both first paragraphs refer to the Civil Service Reform Act (cited in both lawsuits by reference to 5 U.S.C. § 7701-7703, sections which concern appeals to and from the Merit Systems Protection Board);  the "remedies of" Title VII of the Civil Rights Act of 1964;  the Rehabilitation Act;  and the Age Discrimination in Employment Act.  The only law *not* specifically referenced in the first paragraphs of both complaints is a law plaintiff refers to in the instant Complaint as "the Whistleblower's Protection Act."  However, various "reprisals" are repeatedly referenced in both complaints and these allegations are broad enough to include reprisals or retaliation specifically for whistleblowing activity.  The Tenth Circuit recognized this fact in its decision issued in an appeal of Judge Thompson's earlier rulings in CIV-99-1797.  In that decision, the Circuit stated that in his proceedings before the Merit Systems Protection Board (the results of which are contested in both the 1999 action and in this action according to allegations

---

[6]Both complaints include two paragraphs numbered "3."

-6-

in both complaints), Mr. Coffman "contended that his termination was the result of unlawful discrimination on the basis of an alleged disability, his age (62 years), <u>and as retaliation for</u> his filing of age discrimination complaints and <u>whistle-blowing disclosures</u>." <u>Coffman v. Glickman</u>, 328 F.3d 619, 621 (10th Cir. 2003) (emphasis added).

Because claim preclusion operates not only as a bar to claims formally alleged and adjudicated in the earlier complaint but also as to claims which could have been alleged in the earlier complaint, the court goes on to consider what types of claims could have been alleged in the 1999 action.

The Tenth Circuit has "repeatedly... held that 'all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes.'" <u>Wilkes</u> at 504, quoting <u>Mitchell v. City of Moore</u>, 218 F.3d 1190, 1202 (10th Cir. 2000); also citing <u>Clark v. Haas Group, Inc.</u> 953 F.2d 1235, 1239 (10th Cir. 1992), described in <u>Wilkes</u> as holding that plaintiff's second suit was barred by claim preclusion because the claims in each case were predicated on plaintiff's employment; and also citing <u>Yapp</u>, 186 F.3d at 1228 (10th Cir. 1999), described in <u>Wilkes</u> as stating that "the Court in <u>Clark</u> eliminated all ambiguity in the meaning of 'transaction' in this factual context: it stated that the 'transaction' was Clark's employment."

Plaintiff appears to argue that the reprisals alleged in the 1999 Complaint did not include his whistleblowing claims and that this fact distinguishes the instant lawsuit from the prior lawsuit. However, claims alleging reprisals by the Department for plaintiff's whistleblowing activity are claims which are predicated upon plaintiff's employment with the Department. Applying the general rule that all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes, it makes no difference whether plaintiff

first alleged claims based on reprisals for whistleblowing in the instant action; those claims could have been alleged in the 1999 action because they are predicated upon plaintiff's employment.[7]

Before reaching any determination regarding the identity element of the claim preclusion doctrine, the court has reviewed the record attempting to determine the scope of plaintiff's claims as he understands them, whether or not the pleadings have been formally conformed to that understanding. Having conducted that review, the court finds that the broadest possible description of plaintiff's claims contained anywhere in the record is that plaintiff's claims are based on alleged treatment of plaintiff by the Department during plaintiff's employment, at the time of his termination from that employment, or in the Department's handling of what plaintiff refers to as his "retirement" from that employment. Thus, it is clear that all of plaintiff's claims are predicated upon his employment with the Department of Agriculture. The same conclusion applies to all claims which were either actually adjudicated, or which could have been alleged and adjudicated, in the 1999 action.

---

[7]In addition to claim preclusion, there is another problem with plaintiff's whistleblower claims. Plaintiff states that these claims are based on "the Whistleblower Protection Act of 1989," an Act plaintiff refers to specifically in paragraph "f" of the prayer of the instant Complaint. There is, however, no private cause of action in federal court under the Whistleblower Protection Act of 1989. *See*, 5 U.S.C. § 1221 (employees may seek corrective action from the Merit Systems Protection Board). The prayer also cites "32: U.S.C.A. – 2302(b)(8), which the court interprets as a citation to 5 U.S.C. § 2302(b)(8), but that provision also does not create a private cause of action in federal court. Rather, that section prohibits certain personnel practices and provides that employees may seek corrective action from the Merit Systems Protection Board pursuant to 5 U.S.C. § 1221. The court finds and concludes that even if the whistleblower claims were not barred by claim preclusion and issue preclusion, those claims are dismissible. As stated in Olivares v. NASA, 934 F. Supp. 698, 705 (D. Md. 1996), *aff'd*, Olivares v. National Aeronautics and Space Admin., 114 F.3d 1176 (4th Cir. 1997), "Some...claims may be dispatched summarily [such as]...any complaint based on prohibited personnel practices under 5 U.S.C. § 2302, *e.g.* [reprisals for] whistleblowing, [which] must be pursued through the Office of Special Counsel; Congress intended to create no private statutory right of action in federal courts to enforce that section." Olivares, citing Ryon v. O'Neill, 894 F.2d 199, 201 (6th Cir.1990) and Carducci v. Regan, 714 F.2d 171, 175 (D.C.Cir.1983).

This determination, that all of plaintiff's claims are predicated upon his employment, does not quite end the claim preclusion inquiry. A question remains as to whether any of plaintiff's employment-related claims arose after the date when claim preclusion *ceases* to operate. In other words, having found that all of plaintiff's claims are employment-related, the court must go on to consider whether plaintiff has evidence to support any employment-related claims in the instant action which are new enough that they could not have been raised in the 1999 action. To answer this question, the court first considers on what date claim preclusion ceases to operate.

In Mitchell v. City of Moore, 218 F.3d 1190 (10th Cir. 2000), the issue was whether summary adjudication of alleged adverse employment actions in defendants' favor barred arbitration of plaintiff's challenge to his termination, when termination occurred after the lawsuit had been filed. Mitchell states the general rule already quoted in this Order, that all claims arising from the same employment relationship constitute the same transaction for claim preclusion purposes. Mitchell then goes on to indicate agreement with limiting the preclusive effect of an adjudication to claims based on conduct occurring prior to the filing of the initial complaint, rather than precluding claims based on conduct occurring after the complaint was filed, presumably, up to the date of judgment in the initial action. The Court stated as follows. "While we have yet to decide the issue, we agree with those courts which hold that the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed." *Id*. at 1202. The Court cites Johnson v. Board of County Comm'rs of Johnson County, Kansas, 1999 WL 1423072, at *3-4 (D. Kan. 1999) for the proposition that "[b]ecause a plaintiff has no obligation to expand his or her suit in order to add a claim that he or she could not have asserted at the time the suit was commenced, several circuits have held that res judicata does not bar a second lawsuit to the extent that suit

is based on acts occurring after the first suit was filed." Mitchell, 218 F.3d at 1202-03. The outcome in Mitchell did not depend upon this point, however, and the Court ultimately affirmed the district court's (Judge Robin Cauthron's) determination that claim preclusion did not apply because there was no identity of parties. Mitchell, 218 F.3d at 1203. Thus, the Court's suggestion in Mitchell that claim preclusion need not apply past the filing date of the initial lawsuit is dicta.

Furthermore, the facts of the instant case are distinguishable from Mitchell. The claims whose survival the Tenth Circuit considered in Mitchell were based on distinct conduct, i.e. plaintiff's termination from employment. In contrast, here, plaintiff's filings constantly refer to "the sequential, ever escalating attacks of a vendetta type reprisal." For example, plaintiff states that "[t]he duplicity of issues and claims is because there was [sic] so many," and that "[t]hese many incidents are brought out to establish pattern and practice." (Response to Motion to Dismiss, p. 2, ¶ 4.)

Thus, unlike the situation in Mitchell, it is not the survival of a distinct claim based on separate conduct such as termination which is in issue, but the survival of later-arising claims which form part of a longstanding pattern of conduct. Mitchell expressly distinguishes Yapp and Clark, cases in which the claims alleged in the second lawsuit were precluded, stating that in those decisions "the facts giving rise to the second lawsuit – termination in both cases – were in existence at the time the first suit was filed." Mitchell, 218 F.3d at 1202. Mr. Coffman's termination occurred prior to the filing of the 1999 action. In this respect, the instant action is more similar to Yapp and Clark than to Mitchell.

The Tenth Circuit's treatment of that decision in Wilkes is also of interest. Wilkes cites Mitchell to support the rather strongly worded proposition that the Tenth Circuit has "repeatedly" "held" that all claims arising from the same employment

relationship constitute the same transaction for claim preclusion purposes. Wilkes, 314 F.3d at 504. The plaintiff in Wilkes argued that at the time of her first lawsuit she had not yet received a right to sue letter from the EEOC so that she was statutorily prohibited from raising her Title VII claims in her first lawsuit and should be allowed to raise them in the subsequent suit. *Id*. at 503. Despite its citation with approval of Mitchell, Wilkes indicates no hesitation to apply claim preclusion past the date of filing of the first lawsuit (and presumably up to the date of judgment in the first lawsuit), based on the theory that the plaintiff could have amended her suit to include later-arising claims during the pendency of the first lawsuit. Wilkes, 314 F.3d at 506. Wilkes quotes Woods v. Dunlop Tire Corp., 972 F.2d 36, 41 (2d Cir. 1992) for the observation that there was "no reason to excuse [plaintiff's] failure to take these minimal steps necessary to preserve each claim independently" so that the Woods' plaintiff's "Title VII claim [was] not exempt from the bar of res judicata." Wilkes, 314 F.3d at 506.

In light of these uncertainties regarding Wilkes and Mitchell, and given the problems which result from a theoretical presumption that a plaintiff can amend his or her lawsuit at any time up to the date on which judgment is entered, it is simply not known whether, if presented with the facts and procedural history of the instant case, the Tenth Circuit would determine that claim preclusion applies to Mr. Coffman's claims which are based on defendant's conduct occurring prior to the date of *filing* of the 1999 action (November 17, 1999), or, on conduct occurring prior to the date *that judgment was entered* in the 1999 action (November 30, 2004). Rather than decide this question, the court extends plaintiff the benefit of the earliest possible date on which claim preclusion could cease to bar Mr. Coffman's claims, November 17, 1999.

With that date in mind, the next question is whether, in response to defendant's well supported motion for summary judgment, plaintiff has provided any evidence of claims based on conduct occurring after that time.

Plaintiff's moving papers are replete with statements that the conduct he complains of in the instant lawsuit occurred over many years, including after his termination and during his "retirement process." Typical of such statements is the representation by plaintiff, contained in his supplementary materials, that:

> --The time period of these claims need to be considered. The claims were repeated at different times by different individual perpetrators. The discrimination and reprisal was carried out over a period of years, including the retirement process and many times after termination. (Plaintiff's supplement, p. 11.)
>
> --USDA decisions were made after a long period of hostile reprisals in and ever increasing manner. This hostile reprisal continued through the retirement process and beyond. (Plaintiff's supplement, p. 12.)
>
> --The hostile action against the defendant continued over a period of years with relentless actions in ever increasing severity. (Plaintiff's supplement, p. 12.)

Similarly, plaintiff's portion of the Joint Status Report filed on February 2, 2005, states as follows:

> Plaintiff's cause of action was the years and years of continuing, escalating toxic reprisal and unlawful coercion for whistle-blowing and EEOC grievances." (Joint Status Report, docket entry no. 29, p.1.)

Even if the court considers plaintiff's statements that his claims continued for a long period of time as the equivalent of verified statements in an affidavit – which it does – such statements are merely conclusory. Conclusory statements in affidavits are insufficient to defeat a properly supported motion for summary judgment. *See*, Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d 1384, 1393 at n. 12 (10th Cir.

1988) (plaintiff's only evidence suggesting retaliation was conclusory allegations of retaliation which was insufficient to defeat summary judgment). Conclusory affidavits are inadequate, even when propounded by pro se plaintiffs. Guthrie v. Sawyer, 970 F.2d 733, 738 (10th Cir. 1992) (pro se plaintiffs' assertion that evidence supporting their allegations was in the hands of the opposing party was insufficient to justify denial of summary judgment).

Lacking any evidence or even particulars in any statements (construed as affidavits), the court has searched the record for references to allegedly illegal conduct specifically dating from after November 17, 1999. The court finds no such dates either in plaintiff's original response to defendant's motion to dismiss or in the text of plaintiff's supplemental brief filed after the motion was converted. Although the original response describes a number of purported "incidents," plaintiff provides no dates for any of these alleged incidents and nothing in their nature suggests that they occurred after the 1999 lawsuit was filed. With two insignificant exceptions,[8] none of the documents attached to plaintiff's supplemental brief dates from, or even refers to, a time later than November 17, 1999.

The court finds and concludes that none of plaintiff's record evidence, nor any inferences, nor even any statements by the plaintiff, support the existence of any claims based on conduct specifically occurring after the 1999 lawsuit was filed. Accordingly, there are no triable issues concerning the existence of any new claims

---

[8] A "Neuropsychology Evaluation" is dated November 19, 2002. That evaluation states that plaintiff was "self-referred" to the hospital so the fact that the evaluation occurred does not depend upon any conduct by the defendant. Also included in plaintiff's materials is a March 9, 2000 letter from plaintiff to Mr. Peter C. Sleight at the U.S. Department of Agriculture. The letter requests that Mr. Sleight proceed with plaintiff's formal complaints because the outcome of his EEO complaints was, by then, known. The letter refers to informal grievances "filed much earlier, on June 12, 1996 and June 20, 1996," "[a]t a time when the workplace hostility and harassment increased against me by the amateur psychologist clerks increased to a frenzy." Thus, the grievances referred to in the 2000 letter occurred prior to November 17, 1999.

which could not have been alleged in the 1999 action. This finding, when combined with the court's earlier finding that all claims are predicated upon Mr. Coffman's employment with the Department, results in the conclusion that there are no claims presented in this action which were not alleged, or which could not have been alleged, in the 1999 action. Thus, there are no triable facts as to the identity element of claim preclusion. As the court has already found no triable facts with respect to any of the other elements, it is clear that there are no triable facts at all with respect to the operation of claim preclusion.

A few additional points need to be made before the court states its final determination with respect to the operation of claim preclusion in this action.

First, plaintiff's own filings indicate that he is aware there is at least some duplication between the two lawsuits. Plaintiff admits "[s]ome of the same issues are listed in each of the cases to help cover the fact that one case or the other will not make it through the system." (Plaintiff's Motion to Counter Consideration as a Companion Case, docket entry 17, p. 2.[9]) In his original response to the motion, plaintiff states that "[t]he duplicity of issues and claims is because there was so many." (Response, p. 2.) He also states that "[t]he Plaintiff maintains his claim of discrimination on the bases of age, disability, and REPRISAL, for whistleblower and EEO activities – many times over." (Response, p. 2, emphasis in original.) The court

---

[9]In that same document, plaintiff states that the instant action was filed in 2002 "over matters learned and actions taken by USDA management since September 1997." However, the next paragraph states that the instant case has "more to do with the illegal administrative chicanery used to financially cripple the plaintiff to prevent any litigation reaction" and states that "[t]hese attacks were aimed primarily at the retirement benefits of the plaintiff after the termination and whistle bower issues <u>addressed in the Merit System Protection Board trial that was remanded back from the Denver Court of Appeals</u> [which was the subject of the 1999 action]." (Emphasis added.) Thus, while plaintiff's objections to designation as companion cases were intended to persuade then-presiding Judge Tim Leonard that this action and the 1999 action are not related, plaintiff's description of this case as involving retirement and whistleblower issues which occurred prior to the Merit System Protection Board hearing suggests exactly the opposite.

agrees, finding that two of these "many times over" are in this lawsuit and in the 1999 lawsuit.

Second, plaintiff has failed to adequately rebut defendant's motion despite ample opportunity to do so and despite plaintiff's familiarity with the consequences.[10]

Third, the purpose of the claim preclusion doctrine (and, for that matter, the issue preclusion doctrine also) is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication. Sil-Flo, 917 F.2d at 1521. All of these ends are served by the application of claim preclusion here.

In conclusion, for all of the previously stated reasons, the court determines that defendant is entitled to summary judgment based on the doctrine of claim preclusion.

## B. Issue Preclusion

Unlike claim preclusion, the doctrine of issue preclusion only bars claims which were actually adjudicated in the prior action. Sil-Flo, 917 at 1520. Because issue preclusion bars a narrower group of claims, the court's determination that claim preclusion bars this action makes it unnecessary to consider defendant's arguments regarding issue preclusion. Nevertheless, out of an abundance of caution, the court addresses the government's issue preclusion argument as an alternative basis for its rulings.

Issue preclusion operates if four elements are met: 1) the issue previously decided is identical with the one presented in this action, 2) the prior action has been finally adjudicated on the merits, 3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against

---

[10]One of the factors stated by the court in its grant of summary judgment in the 1999 action was that the motion had not been responded to and had been confessed. CIV-99-1797-F, Order of November 30, 2004 (docket entry no. 77 in that action).

whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Dodge v. Cotter Corp., 203 F.3d 1190, 1198 (10th Cir. 2000). Unlike claim preclusion, there is no identity of parties requirement. Sil-Flo, 917 F.2d at 1520.

This Order has previously made findings establishing each of these elements and it is only necessary to elaborate slightly upon the first element, identity of issues decided with issues presented. Based on the similarity of the manner in which both complaints formally allege the claims in issue in each action, and based on the identity in issues apparent from the manner in which plaintiff describes in his filings his understanding of the claims presented in both actions, the court finds that all of the presented in the instant action were alleged and adjudicated in the 1999 action. Accordingly, the identity of issues requirement is met and there are no triable issues of fact concerning the application of any of the elements of issue preclusion.

The court concludes that defendant is entitled to summary judgment based on the doctrine of issue preclusion.

## II. Third Motion to Dismiss

As an alternative to summary judgment, Defendant's Third Motion to Dismiss urges dismissal with prejudice under Fed. R. Civ. P. 16(f), 37(b), and 41(b), due to plaintiff's failure to comply with the court's scheduling order.

Defendant argues that plaintiff has not filed a list of expert witnesses, a final witness list, or a final exhibit list, all of which were overdue at the time defendant filed its motion. Although the court need not consider this motion in light of its rulings on summary judgment, rather than strike the motion as moot, the court considers the motion in order to state the following findings.

The court agrees with the undisputed recital of events stated in defendant's motion and finds that plaintiff has not complied with the court's scheduling order in

this action. Although plaintiff has now filed his witness and exhibits lists, these filings were late and were filed without permission for an extension. No reason, much less any excuse, has been offered by the plaintiff for the lateness of these filings.

One of the factors which the court must consider in determining whether this action should be dismissed for failure to follow the court's scheduling orders, is the degree of actual prejudice to the opposing party. *See*, Gripe v. City of Enid, 312 F.3d 1184, 1188 (10th Cir. 2002) (stating five factors district court must consider in evaluating whether dismissal is an appropriate sanction). Any prejudice resulting from the lateness of plaintiff's witness and exhibit lists is minimal. Therefore, despite the unexcused lateness of the filings, and despite prior failures to follow court rules and the Federal Rules of Civil Procedure, the court concludes that this action should not be dismissed for this particular failure to meet the court's deadlines.

## Conclusion

For these reasons, having carefully considered the parties' submissions, the record, and the relevant arguments and authorities, the court rules as follows.

Defendant's Motion for Summary Judgment is **GRANTED** under Rule 56 based on claim preclusion and, in the alternative, based on issue preclusion. All claims alleged in this action are foreclosed on each of these two grounds.

Defendant's Third Motion to Dismiss is **DENIED**.

Dated this 7th day of June, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

02-1625p012(pub).wpd